Good morning, your honors, may it please the court, I'm here representing David Jackson, who is the defendant in court below. I'd like to reserve four of my minutes for rebuttal if I may. Your honors, the reason that we're here today is to evaluate whether or not David Jackson violated the federal carjacking statute. And I think that the kind of the point for this court to consider is whether or not at the time he had the intent to take the vehicle, whether he also had the intent to cause serious bodily injury or death if the vehicle wasn't turned over. We would submit that there is no evidence in the record and there's no possible inference from the evidence in the record to be able to prove that element of the carjacking statute, and therefore this court must overturn that carjacking conviction. And I say that because all of the evidence that is in this case points to a state crime. None of it points towards the state. And that is because at the time that David Jackson took the vehicle, there's no even evidence that he had the intent prior to him going to the vehicle that he had the intent to take it from the alleged victim in this case, Ms. Boyd. Matter of fact, she testified to that in her own testimony. If you take a look at the testimony of Ms. Boyd and take a look at the page ID number 761, and that's where she is giving her rendition of the events that occurred. She says that she's the one that went to where Mr. Jackson was residing. And she went there to try to get her kid back. She had voluntarily, Mr. Jackson and Ms. Boyd have a kid together. That child was voluntarily given to Mr. Jackson for an overnight stay. She wanted the kid back. And so she, and he said, I'm going out of town with the child. And she didn't want that. So she went over to his place, pulled her car up, blocked him in. And then while she is still in the vehicle, her testimony is that he waved a rocket. The government wants you to take that evidence, that waving of the rock at her and say that showed that he had the intent to use serious over the car. The problem with that is that her own testimony says that he waved the rock at her and told her to leave while she was still in the car. So his intent was not to take the vehicle at that point. His intent was for her to leave in the car and leave him alone. Well, it's odd that you would infer his intent from her account of what happened. I mean, normally they're not, you know, in any kind of a carjacking, we look at all the events that occurred and then we go back and, you know, we infer what the intent was. And it's not necessary that he have had a prior plan to take the car, but you can infer the intent from what then happened when she didn't skedaddle out of there. Well, two things, Judge Givens. First, I would submit that the federal carjacking statute is designed for that prior intent because that's the primary. It doesn't have to. Well, but it doesn't have to be as prior as you want to make it. I guess that's the point. I think that's correct, isn't it? The cases that normally come before this court on carjacking are that someone is sitting at a stoplight, that somebody is stopped in a parking space, and someone comes up with them with the intent to take the vehicle. And that's the chief evil that the carjacking statute was invented in the first place. And you infer that intent, don't you, normally from the fact that the car was taken. No, you also infer it from the location of the vehicle and what was happening with the parties at the time that it occurred. And that's what is an important difference in this case because you got to remember that Ms. Boyd went over to his house and blocked him in at his house. This isn't a situation where somebody comes up in a parking lot where somebody's lawfully there and they take their car from them. Like the Washington case, for example. The Washington case is a convenience store case, right, where somebody comes up to the convenience store and then they take the car from them in the convenience store. This is different than that. But more than that, even if you let's set aside Ms. Boyd's direct testimony of what actually occurred with the rock because I think what I'm saying is that doesn't necessarily prove his intent but it improves what his intent was when he's waving the rock away because that's the only evidence. Again, we only have what the government's evidence actually is in the record in this case. And the government's evidence that's in the record is this waving of the rock and then they have after Boyd leaves the vehicle voluntarily and gets into a fight with one of the other co-defendants in the case. After that fight's going on, at some point she turns around and Mr. Jackson's in the vehicle and he's driving it away. The overall intent to harm her can also be inferred from this altercation she got into with the co-defendants, right? You could say that that would be an intent to harm her but you still have to put that nexus with the intent to harm her for the purpose of taking the vehicle. And that's what the Washington case alludes to and that's what Holloway says. That the intent that we're looking at here is not the intent to cause harm because that can get us a wide range of conduct. It's the intent to harm. And that's what's missing here in this case and that's what makes this case different from a lot of the cases that's in front of this court. There is no evidence that there was an intent either explicit or conditional that if she doesn't turn over the car, serious bodily injury or death will occur in this case. And that's what the government is required to prove under the statute and that's not what's present in this case. The only other fact that the government even points to is the fact that when he backed up the car, she was behind the vehicle at that point. And they allege in their brief that that could have been intent that he was trying to run her over as he was leaving. But again, if you take a look at the actual evidence in the record, it's in page IDs number 719 through 721. It doesn't show that at all. This is testimony from one of the and the neighbors basically says that he backed up and that she was behind it and she stepped aside as he was backing up. That's the sum total. There was no discussion of that he was gunning for, that he was backing up towards her, anything like that. She was behind him, she steps aside, and then he goes away with the vehicle. The Holloway case, and I just want to read a section of the Holloway case because I think it's important here. The statute's mens rea component does modifies the act of taking the motor vehicle. It directs the fact finder's attention to the defendant's state of mind at the precise moment he demanded or took control over the car by force and violence or by intimidation. If the defendant had the prescribed state of mind at that moment, the statute's signature element is satisfied. So what is the evidence in the record here that at the moment he went into the vehicle and took the vehicle, he had the threat, conditional or otherwise, to cause her serious bodily injury or death if she didn't turn over the vehicle? And I would submit to you that the answer is that there's none in this record. I'd be happy to discuss the 404B issue if the court has any questions about it, but other than that, I would leave it to the brief that I've got. The 404B evidence is pervasive and unnecessary in this case. Well, it actually, this discussion about the intent might actually highlight why it could be that evidence has a fair degree of probative value. Well, I disagree, Your Honor, because let's take some of the most egregious examples of the 404B evidence, which is the conduct that occurs in Miami, Florida days after this carjacking experience, right? We're trying to prove the state of mind of this defendant, Mr. Jackson, at the time he enters the vehicle, right? I actually was referring to the evidence that shows the relationship between Mr. Jackson and the women who were on the scene. Well, and this is that, because two of the women that were on the scene are part of that 404B evidence that occurred after the fact, okay? Because they went to Florida with him. And so we have the evidence that one of them got hit while they were in Miami, Florida. We have the evidence that one of them got, I think, punched in the back of the head while they were in the car on the way to Miami, Florida. And then we have the threat that he made to the FBI after he's caught, right? None of those facts go to proving his state of mind at the time he took the vehicle. And that's the problem with the 404B evidence in this case. It shows he's a violent character. It shows he's a bad individual, which is what they're trying to show the jury. But it on that particular day. Thank you, Your Honor. All right, Ms. Smith. Good morning. I'm Helen Smith. I represent the United States in the appeal. I have also represented the United States since July 12, 2010, when this child was kidnapped by his drug-impaired adult women and one drug-impaired minor female and transported across approximately five state lines, barreling down the highway at high rates of speed from Greenville, Tennessee to Miami, Florida, where Mr. Jackson and these three women were found in a motel on Flagler Street, stoned beyond description. There are three issues, three legal issues in the case, Your Honor. I think sometimes we get caught up in the technicalities of the arguments, and we kind of lose sight of the facts in the defending Judge Greer on two of these issues and his rulings. It is my honor to defend the rulings that he made. He made the correct ones. He was a highly accomplished trial lawyer, whom I had the opportunity to litigate against before he took the bench. And he's very comfortable with the rules of evidence. He conducted two hearings on the 404B issue. There was a complete disclosure by my side of all of the evidence. I knew that I would lose some of those issues, and I figured I would lose the issue about the evidence of the drugs and the prostitution and the guns. And that's what he did. He made a very careful ruling on the 404B evidence. And then a weekend elapsed, and then again, right before we started the trial, he had another hearing to make sure that he had done the right thing. And it's all right there on the record. The 404B evidence that went in was correctly done. It was almost all res gestae. And Judge Greer made the right ruling. There is nothing that assaults that. Regarding the sentence that was imposed on Mr. Jackson that Mr. Shadd did not address, I don't want to make it appear that I'm going unfairly. But Judge Greer, again, it is my honor to appear before him. And I know Mr. Shadd does not handle sentencing with him, so it's somewhat not fair. But Judge Greer is highly conscientious. He agonizes over his sentences. He remains the best cross-examiner that I've ever seen. Even when you forget to ask the questions or your opponent forgets to ask it, he asks the questions. And sometimes they help me, sometimes they do not. But he is very conscientious. The record that Judge Greer makes on his sentencing is impeccable. And there is no basis to overturn the sentence. Which leaves us on the sufficiency of the evidence. The record speaks much more eloquently than I could do. I will note that this was a very challenging case for me. It was a very challenging case. We got a complaint. We got a search warrant done. I made the mistake of looking at the department's statistics for the kidnapping of children by non-custodial parents. And they're very grim. They've been keeping stats since the 30s, I guess. And 70% of children who are not returned to their custodial parent within 36 hours are never seen alive again by the custodial parent. And that quickened our pace. We devoted a tremendous amount of resources, including what can only be described as a canvassing of the motels on Flagler Street in Miami, Florida. We had boots on the ground the minute we had a positive ID on a cell phone, essentially. This was very important. It was very real. And we proceeded very judiciously and carefully. The evidence was, as Judge Greer pointed out, overwhelming at some points. And I really don't know what else to say. If you want me to answer his specific questions about just an observation about the case, it's not a typical car. No, ma'am. I mean, Mr. Shad is right about that. So maybe you could focus just for a moment very specifically on what it is in the record that we would use to infer the requisite intent with respect to Mr. Jackson. Certainly, Your Honor. Thank you. First of all, there was the assault that Mr. Jackson perpetrated on Ms. Boyd in March of 2010, three months prior. He is a manipulative and controlling individual. He articulated his intent to her that he intended to remove this child. That's what drove everything. In most carjacking cases, and he's correct, a car is stolen to flee a crime or to commit another crime. The car was stolen here to make sure that she did not get that baby back. It was a power struggle between the two of him. He asked her to leave. She said, no, I find his rendition of waving a rock. You know, I've waved at a lot of people in my life. I've never waved at anyone with a rock. That's called brandishing a rock. It is a threat. The law says force and violence or intimidation. He intimidated her just as he intimidated and controlled these other women. The only difference was he didn't give them drugs. He didn't give Boyd drugs. A lot of what the appellate rests his case on is Ms. Boyd's trial testimony, which directly conflicted with her testimony before the grand jury. And I found myself in the unusual situation of impeaching my own witness. But that's exactly what happened. She recanted. She is a codependent individual. Not at all unusual for this kind of to lock them down. When when Ms. Boyd announced that she was going to call 9-1-1, he takes the phone from her hand and throws it across the road in the ditches. And that was never recovered. I even went and looked at it, look for it. Never found that telephone. He brandished the rock at Ms. Boyd. He attempted to run Ms. Boyd over with with the car. He directed Colina, also known as he himself assaulted Ms. Boyd. All of the witness testified that Jackson and Boyd rolled around on the ground fighting each other right there in front of the car. He threatened to kill Stumbo and Laughlin, his co-defendants and their children, as part of this whole thing to get them to do his bidding. They were terrified of the man. He told them he had killed people and led them to believe that he would kill them as well if they did not do as he was as they were told. And then, of course, we have his utterance to at the immediately after he was booked. I'm not going to repeat it because there are children in the room, but it was quite obvious that he intended to kill Ann Boyd even. And it wasn't that many hours. It was less than 48 hours since the time that the car was taken. This all happened very quickly. It's a miracle that the child was not harmed. I did have a few other notes, Your Honor, if I can just look at that. You know, her realization at trial, which was a year, almost a year, March, I guess it was May 2010. I'm sorry, July 2010 to March 2011 is not established his intent at the time of the offense. At the time that the car was taken, he intended to harm her. He was going to do anything to keep that baby away from her. And that's what kind of drove the train here. I don't know if the court has any other questions. Thank you. Thank you, Your Honors. Posing counts started out her argument by saying, talking about child being kidnapped, about drug impaired, about barreling down the highway and about being stoned out of their minds when they got caught up in Miami. And that's what this case is about. And the problem is that this is a state kidnapping case, and they're trying to shoehorn it into the federal carjacking statute because for whatever reason, the state hasn't moved on it. And that's the real problem here. This doesn't fit the federal carjacking statute under the facts that they presented in this case. They want you to say, don't listen to Ms. Boyd's trial testimony, because in the grand jury, she said something different. Well, this appellate record is going to be based on the trial testimony. If you review the redirect examination, you won't see her rehabilitated on this basic fact, which she says again on page 761, which is he held a rock up and told me to get off his property. That can't be intent for him to hold the rock up and say, with the intent to get the car and to murder her if she didn't give him the car. It's the opposite of that, and that's the testimony that they need to rely on. And that's the basic problem with this case. This is a state kidnapping case. They just tried to shoehorn it into the federal carjacking statute. Thank you. We thank you both for your argument. We'll consider the case carefully.